Minute Order Form (06/97)



# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2337 | **DATE** | 8/8/2002 |
| **CASE TITLE** | Dahana Sutherland vs. Norfolk Southern Railway Co.,et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant's Motion for Summary Judgment is granted and the case is dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 9 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 26 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK'S OFFICE 02 AUG -8 PM 4:12 | date mailed notice | |
| WAP | courtroom deputy's initials | OT Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
AUG - 8 2002
Judge Harry D. Leinenweber
U.S. District Court

AUG 9 2002

DAHANA SUTHERLAND,

    Plaintiff,

v.

NORFOLK SOUTHERN RAILWAY COMPANY and NORFOLK SOUTHERN CORPORATION,

    Defendants.

Case No. 01 C 2337

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before this Court is Defendant Norfolk Southern Railway's ("NSR") Motion for Summary Judgment pursuant to FED. R. CIV. P. 56.

### BACKGROUND

Plaintiff Dahana Sutherland ("Sutherland") was hired by NSR in September 1993 as a switchman in its Calumet Yard. After two years as a switchman Sutherland asked M.L. Crawley ("Crawley"), then Superintendent of the Chicago Terminal, and S.B. Gibson ("Gibson"), then General Yardmaster, that she be considered for a position as a Yardmaster. Shortly thereafter, Gibson forwarded Sutherland's request, with his endorsement, to NSR management. Prior to assignment as a Yardmaster, NSR requires that candidates take three tests. The tests are the SRA Verbal, the SRA Nonverbal, and the Personnel Classification Test (the "PCT"). On August 28, 1996, Sutherland achieved "passing" scores on the two SRA tests, which

together are used by the Human Resources Department (the "H.R. Dept.") to determine whether a candidate is eligible for a Yardmaster position. With passing raw scores of 51 on each of the two SRA tests, Sutherland was recommended for, and subsequently assigned to, an Extra General Yardmaster position on September 22, 1996.

On the third test, the PCT, Sutherland received a score of 17. This score put Sutherland in the bottom 10 percent of all those who took the PCT. The PCT is designed to measure objectively a candidate's verbal and numerical problem-solving skills, vocabulary, and ability to communicate. For the purposes of obtaining a Yardmaster position, the PCT score is not used unless an individual scores below the required levels on either of the two SRA tests. Sutherland's PCT score was not used in her promotion to Yardmaster because her SRA scores were, by themselves, adequate.

Three years into her tenure as an Extra General Yardmaster, Sutherland approached Burl Scott ("Scott"), Superintendent of NSR's Chicago Terminal, about her interest in being promoted to the position of Trainmaster. This would be a promotion from a union position, to a non-union, management position. During the discussion, Scott asked Sutherland a number of questions, such as whether working late with men in remote locations would be a problem for either her or her family. At the end of the conversation, Scott requested that Sutherland put her request and

qualifications in writing. Upon receipt of Sutherland's written request and resume, Scott forwarded them, *with his endorsement* of Sutherland as a candidate for Trainmaster, to the Senior Superintendent of the Chicago Terminal, S.A. Murray.

In the two years following Sutherland's request to become a Trainmaster, twenty-two individuals, both men and women, were either transferred, promoted, demoted, or hired to be Trainmasters at NSR. Sutherland was not one of them. Instead, Sutherland remained in her Yardmaster position and on June 29, 2000 filed a claim with the Equal Employment Opportunity Commission (the "EEOC") alleging that she was passed over for promotion because she is a female. On January 31, 2001, the EEOC issued Sutherland a right-to-sue letter, and on April 4, 2001 she brought suit in this Court alleging that NSR's failure-to-promote was motivated by her being female, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e.

## DISCUSSION

### Legal Standard

When evaluating a motion for summary judgment, the court will view all the evidence and draw all inferences in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Only when there is no genuine issue of a material fact will the court grant summary judgment. *Krchnavy v. Limagrain Genetics Corporation*, ____ F.3d ____, 2002 WL 1358591, at *3 (7th

Cir. June 24, 2002). The party who bears the burden of proof on an issue may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact that requires trial. *Vukadinovich v. Bd. of School Trustees of North Newton School Corp.*, 278 F.3d 693, 699 (7th Cir. 2002).

## Defendants' Motion for Summary Judgment

NSR moves for summary judgment on Sutherland's complaint asserting that there is no genuine issue of material fact as to whether NSR's failure to promote Sutherland was motivated by gender. In evaluating a plaintiff's allegation of gender discrimination brought under Title VII, unlawful discrimination may be proved either through direct evidence of improper motive, or by the burden-shifting method enunciated in *McDonnell Douglas v. Green*, 411 U.S. 792, 801-803 (1973).

### Direct Evidence

Sutherland asserts that a number of Trainmasters at the Chicago Terminal made statements suggesting that Scott and Assistant Terminal Superintendent Zimmerman ("Zimmerman") harbored negative attitudes toward women working on the railroads and that this may amount to direct evidence of discriminatory intent. Direct evidence, the holy grail of discrimination suits, is rare indeed, as few employers will provide such fodder in the process of wronging an employee. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). Accordingly, statements made by

nondecision makers that are essentially speculation about the attitude of decision makers do *not* amount to direct evidence. *O'Regan v. Arbitration Forums, Inc.*, 246 F.3d 975, 986 (7th Cir. 2001)(quoting *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391, 397 (7th Cir. 1997)). Even if one concedes that Scott and Zimmerman were the "decision-makers" in Sutherland's case (which, as discussed below, is not so), their alleged attitudes still fail to rise to the level of direct evidence of discrimination. As a result, Sutherland must rely on the burden-shifting method.

### McDonnell Douglas Burden-Shifting Method

Sutherland must show the following four elements to establish a *prima facie* case and shift the burden to NSR: (1) she was a member of a protected class; (2) she applied for, and was qualified for, an open position; (3) the employer rejected her for the position; and (4) those that were promoted had similar or lesser qualifications for the job as she did. *Bennett v. Roberts*, 2002 WL 1420408, at *4 (7th Cir. July 2, 2002).

At the onset, NSR does not contest that Sutherland, as a female, is a member of a protected class or that she suffered an adverse employment action by their failure to promote. Rather, the parties disagree as to the second and fourth prongs of the *prima facie* case, namely, whether Sutherland was qualified for the position of Trainmaster and whether similarly situated male

employees were promoted while she toiled as an Extra General Yardmaster.

First, NSR contends that Sutherland fails to establish a *prima facie* case because she was not qualified for the position of Trainmaster. Unlike the evaluation process for the Yardmaster position which uses as a threshold the SRA scores, NSR's H.R. Dept. uses a candidate's objective PCT score to determine whether that candidate will be considered for a Trainmaster position. Candidates hired from outside NSR, or candidates seeking promotion from a union position to a non-union, management position, as Sutherland was, are required to have taken the PCT.

Based on the PCT score of an applicant holding a union position within NSR, the H.R. Dept. will initially classify candidates as "recommended," "recommended with reservations," or "not recommended." To be "recommended" for the position of Trainmaster, a candidate must score 27 or higher on the PCT. Scores of 26 or 25 net a candidate "recommended with reservations," and a candidate scoring lower than 25 will be "not recommended." A low score on the PCT suggests a candidate will both have problems communicating with other managers and difficultly solving problems a manager will face during the course of his or her daily employment. Candidates who are classified as "not recommended" are removed from consideration for any Trainmaster positions.

As a Yardmaster, Sutherland was in a union position. Trainmaster is a non-union, management position. Sutherland's 17 was one of the lowest scores of all candidates who took the PCT, and was well below the cut off for even "recommended with reservations." In January 2000, Alphonso Tabb ("Tabb"), Manager, Professional Recruiting, in the H.R. Dept. responded to a request from Scott asking for a list of viable candidates for anticipated Assistant Trainmaster openings. After reviewing Sutherland's file, Tabb wrote in an e-mail that Sutherland was not a viable candidate for Assistant Trainmaster ("not recommended") and unless she had undergone some formal education courses since she took the PCT, she did not need to retake the PCT. Sutherland did not then, nor does she now, assert that she has any additional formal education beyond that listed on her resume from the time she joined NSR in 1993. As a result of Tabb's objective determination Scott did not consider Sutherland for a promotion to any of the Assistant Trainmaster positions that became available.

Second, NSR contends that none of the twenty-two individuals who attained Trainmaster positions since Sutherland expressed an interest in being promoted were similarly situated to Sutherland, a requirement of the *prima facie* case. Additionally, NSR asserts, the five employees who were similarly situated to Sutherland were all passed over for consideration as Trainmasters, as Sutherland was.

In order for Sutherland to meet her burden of being "similarly situated," she must show that there is someone directly comparable to her in all material aspects. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 679 (7th Cir. 2002). In considering material aspects, the "court must look at all relevant factors, the number of which depends on the context of the case." *Radue*, 219 F.3d at 617.

Within the context of this case, the "relevant factors" are (1) a candidate's PCT score and (2) whether the candidate was moving from a union position to a non-union position, because these were the only factors used to initially determine if Sutherland would be considered a viable Trainmaster candidate. Moving from union to non-union also includes those candidates hired from outside NSR, since they too are required to take and "pass" the PCT to be considered for Trainmaster positions. Candidates for Trainmaster that do not match Sutherland in the above criteria necessarily have different qualifications and experience. Therefore, those candidates cannot be considered similarly situated to Sutherland for the purpose of satisfying the fourth element of a *prima facie* case. *Patterson*, 281 F.3d at 679.

Of the twenty-two individuals who became Trainmasters since the beginning of 1999, none were similarly situated to Sutherland. Twelve of the employees were transferred or demoted from other management positions and as a result, were not required to take the

PCT (Calhoun (M), transfer; Froglia (M), transfer; Hammerstein (M), transfer; Parent (M), demoted; Seely (M), transfer; Shear (F), transfer; Simon (M), transfer; Stauffer (M), transfer; Steinbeck (M), transfer; Thomas (M), transfer; Washington (M), transfer; and Weir (M), transfer). In addition to each being in management prior to assignment as Trainmasters, each held a higher position relative to Sutherland, and are therefore not similarly situated. *See Hoffman-Dombrowski*, 254 F.3d at 650-51.

Of the remaining ten new Trainmasters, three were hired from outside NSR, either from college campuses or from another railroad. All three, one of whom is female, scored well above the cut off set for a classification as "recommended" for Trainmaster (Murphy (F), PCT score – 47; Peters (M), PCT score – 33; and Smith (M), PCT score – 37). None of these three can be considered similarly situated to Sutherland because they did not occupy a union position within NSR and they each scored significantly better than Sutherland on the objective PCT.

There were only seven of the new Trainmasters who, like Sutherland, occupied union positions prior to their promotions. But unlike Sutherland, each one of them "passed" the objective PCT, thereby scoring better than Sutherland (Damron (M), PCT score – 38; Gentry (M), PCT score – 36; Martin (M), PCT score – 29; Meyer (M), PCT score – 31; Sailers (M), PCT score – 38; Short (M), PCT score – 30; and White (M), PCT score – 32). Because each one of these

employees scored above the objective cutoff set by NSR on the PCT, and well above Sutherland, they cannot be seen as similarly situated.

However, there were five other employees who, like Sutherland, scored below the "recommended" and "recommended with reservations" H.R. Dept. classification and also occupied union positions when they were initially under consideration for Trainmaster. Four males (Henderson (M), PCT score - 22; Terry (M), PCT score - 22; Lesley (M), PCT score - 23; and Davis (M), PCT score - 20) and one female (Benford (F), PCT score - 9) were similarly situated to Sutherland. And like Sutherland, all were removed from consideration based on their respective PCT scores coupled with their status as union employees. Sutherland fails to present any evidence to the contrary that affirmatively demonstrates she was qualified for the position of Trainmaster or that establishes there were similarly situated males promoted in her place. As a result, Sutherland fails to establish a *prima facie* case under the *McDonnell Douglas* burden-shifting method and NSR is entitled to judgment as a matter of law.

Assuming, for the sake of argument, that Sutherland's proffered reasons for NSR's failure to promote her do establish a *prima facie* case, her claim would still fail because she does not establish that NSR's non-discriminatory reason was pretext.

As previously discussed, Sutherland, according to NSR, does not have the necessary qualifications to even make it past the initial screening by the H.R. Dept. With a very low score on the PCT, the H.R. Dept. classified Sutherland as "not viable." This classification was reached using an objective PCT score, with notice of the fact that Sutherland was attempting to move from a union position to a non-union, management position. NSR has chosen this method of screening candidates for the position of Trainmaster, as is its prerogative, and this Court will not sit as a super-personnel department in judgment of NSR's Trainmaster selection process, other than to ensure that discriminatory animus did not motivate Sutherland's fate. *See Nawrot v. CPC International*, 277 F.3d 896, 906 (7th Cir. 2002)(Courts will not sit as super-personnel departments). NSR asserts the low PCT score and union position held by Sutherland were the only reasons behind its failure to promote. When Sutherland, Benford, Davis, Henderson, Lesley, and Terry were all eliminated from consideration for Trainmaster, no other factors besides union status and PCT scores were relevant or used by the H.R. Dept. This legitimate, non-discriminatory explanation would be sufficient to shift the burden back to Sutherland to show the reason is merely a pretext for discrimination.

For Sutherland to show that NSR's explanation of why she was not promoted was pretextual, she must demonstrate that the

explanation: (1) has no basis in fact, (2) was not the real reason, or (3) was insufficient to motivate the action. *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1006 (7th Cir. 2002). "Pretext means a dishonest explanation, a lie rather than an oddity or an error." *Peele v. Country Mutual Insurance Co.*, 288 F.3d 319, 326 (7th Cir. 2002)(internal quotations omitted).

The NSR employee manual states criteria for how the H.R. Dept. will determine if a Trainmaster candidate is viable. (Supplemental Declaration of Tabb, Ex. A.) As a threshold, the decision is based on achieving a certain score on the PCT; a score Sutherland did not achieve. Sutherland has not demonstrated that NSR deviated from these guidelines in her case, or in the case of any other Trainmaster candidates.

Sutherland attempts to suggest that Scott was the decision maker in her case, and that because he may or may not have been chauvinistic, that the failure-to-promote explanation given by NSR is not the real reason for her non-promotion. But Sutherland fails to understand that the decision maker in her situation, as it was for anyone labeled "not recommended," was Tabb in the H.R. Dept. Scott would have been the decision maker had Sutherland passed the PCT -- but she did not. In fact, Scott *recommended* Sutherland for the position of Assistant Trainmaster prior to any knowledge of her PCT score. Sutherland was only removed from consideration for the position after Tabb reviewed the relevant factors in her file (PCT

score and union position). NSR adhered to their guidelines and Sutherland has not met her burden to show otherwise. Therefore she has not shown that NSR's explanation lacks any basis in fact or was not the real reason.

Sutherland also attempts to call into question NSR's practice of not allowing someone to retest unless they have had additional, formal education or course work. NSR has an objective policy of not retesting an employee unless that employee has undergone additional formal education since their previous testing. NSR does not feel the cost of retesting is justified without additional education. Sutherland points to the retesting of White as an example. However, White, the only candidate that was allowed to take the PCT more than once, had scored sufficiently high enough on the first exam to make the second one superfluous (White, PCT score - 30). This error by NSR is not sufficient to show that NSR's failure to promote Sutherland was pretextual, and she presents no other evidence that male employees were systematically allowed to retest after "failing" the PCT.

Sutherland fails to establish a *prima facie* case of discrimination because she was neither qualified for the position of Trainmaster nor similarly situated to those who were elevated to the position while she was not. Additionally, Sutherland does not present any facts which would demonstrate NSR's explanation for failing to promote her was pretextual. NSR's explanation is

consistent with their own guidelines, appears to be the real reason (Sutherland has not shown the contrary), and the explanation was sufficient to justify not promoting Sutherland to a management position.

### CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted and the case is dismissed in its entirety.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: August 8, 2002